UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY ALEXANDER FERRELL,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-296-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is denied and defendant's motion is granted.

I.   BACKGROUND

Plaintiff protectively filed an application for a period of disability and DIB on February 24, 2010, alleging that he has been disabled since June 9, 2009. Administrative Record ("AR") 156-57. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 86-89, 96-100. On November 7, 2011, a hearing was held before administrative law judge ("ALJ") K. Kwon. *Id.* at 31-80. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.*

1

On December 16, 2011, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id.* at 18-26. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 9, 2009 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. Through the date last insured, the claimant had the following severe impairments: hypertension, obesity, and hepatitis C (stage 1) (20 CFR 404.1520(c)).

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). He should avoid work at e [sic] to unprotected heights, with hardous [sic] machinery, and should not climb ladders, ropes or scaffolds.

\* \* \*

6. Through the date last insured, the claimant was capable of performing past relevant work as an electronic technician/production supervisor, and regional manager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 9, 2009, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(f)).

*Id.* at 20-26.

Plaintiff's request for Appeals Council review was denied on January 17, 2013, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-5.

II. <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.  ANALYSIS

Plaintiff argues that the ALJ erred by (1) finding that his intracranial hemorrhage was not a severe impairment at step two, (2) rejecting his treating physicians' opinions in favor of opinions from a state agency medical consultants, (3) discrediting plaintiff's testimony, (4) failing to credit third-party testimony, and (5) failing to pose a hypothetical to the VE that included all of plaintiff's limitations.

A. The ALJ Did Not Err at Step Two

Plaintiff contends that the ALJ erred at the second step of the sequential evaluation process by failing to find that his intracranial hemorrhage was a severe impairment. ECF No. 15 at 6–8.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities."

4

20 C.F.R. § 404.1520(c). An ALJ must consider all of the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id*. § 404.1520(a); *Yuckert*, 482 U.S. at 145. "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). Step two is "a de minimis screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence." *Id*. at 687 (citations and quotation marks omitted and modification in original).

At step two the ALJ found that plaintiff's severe impairments included hypertension, obesity, and hepatitis C. AR 20. The ALJ noted that the record also indicated that plaintiff had a history of intracerebral hemorrhage, but found that this impairment was not severe. *Id*. Specifically, the ALJ found that the impairment was resolved within a few months and it therefore did not meet the durational requirement.[2] *Id*; *see* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

As for the intracerebral hemorrhage, plaintiff suffered a stroke on June 6, 2009, and was admitted to the hospital. AR 259. An MRI showed a right posterior parietal intracerebral hemorrhage. *Id*. However, at the time of discharge plaintiff was ambulating at baseline and had full range of motion with full bilateral strength. *Id*. As observed by the ALJ, treatment notes from August 2009 showed that plaintiff was asymptomatic, a review of symptoms was negative, he had no neurological deficits, and no deficits from the stroke. *Id*. at 355-360.

Defendant contends that "[t]he evidence strongly suggests that the *intra-cranial hemorrhage* was a consequence of the claimant's long standing hypertensive disease . . . ." ECF No. 15 at 7 (emphasis in original). While this may be true, it is not determinative. The cause of a particular impairment is not the issue at step-two. Rather, the inquiry is whether an impairment

---

[2] The ALJ's finding is in this regard is supported by the record.

5

has more than a minimal effect on the plaintiff's ability to work. *See Webb v. Barnhart*, 433 F.3d at 686–87. There is no dispute that plaintiff's hypertension met the durational requirement and that the ALJ considered it further in the subsequent steps of the analysis. Indeed, the ALJ found that it was a severe impairment. AR 20, 22-23. However, the fact that plaintiff's hypertension may have more than a minimal effect on plaintiff's ability to work does not necessary mean the same is true for plaintiff's intracranial hemorrhage.

Plaintiff contends, however, that there is evidence that he had residual symptoms from his stroke that lasted more than 12 months. ECF No. 15 at 7. Plaintiff relies on two separate treatment notes to support this position; a June 28, 2008 treatment note which reflects that he experienced fatigue, AR 343; and a July 21, 2011 note that that plaintiff reported experiencing "right periodical headache and right neck pain similar to when it gets hot and when he had a hemorrhage CVA 2 years ago . . . ," *id*. at 479. These treatment notes only show that plaintiff experienced fatigue in 2010, and periodic headaches and neck pain in 2011. While plaintiff may have described these symptoms as similar to those he experienced when he suffered a stroke, there simply is no indication that these impairments were residual symptoms from his stroke. Indeed, the July 21, 2011 treatment note described the degree of severity as mild, and the duration as "lasting today." *Id*. at 479.

In his reply, plaintiff argues that his testimony at the hearing demonstrates that he continued to experience symptoms from his intracranial hemorrhage. ECF No. 17 at 1-4. However, as explained in greater detail below, the ALJ discredited that testimony.

The medical records discussed by the ALJ indicate that plaintiff's hemorrhage was resolved within a few months and did not impose any lasting limitations. Accordingly, the ALJ's finding that this impairment was not severe is supported by substantial evidence.

B. The ALJ Did Not Err in Weighing the Medical Opinions

Plaintiff next argues that the ALJ erred in weighing the medical opinion evidence of record. Specifically, plaintiff contends that the ALJ erred in adopting the medical opinions of non-examining physicians over opinions from plaintiff's treating physicians. ECF No. 14 at 8-11.

/////

6

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

The ALJ found that plaintiff retained the ability to perform less than the full range of light work. AR 21. In making this determination, the ALJ gave reduced weight to the opinions of Drs. Maus and Al Samman, plaintiff's treating physicians, while giving great weight to the opinions from state agency non-examining physicians.

Dr. Maus first saw plaintiff on October 20, 2009. AR 528. On December 7, 2010, he opined that plaintiff was totally disabled from the date of his first visit to present due to chronic persistent fatigue caused by his Hepatitis C. *Id*. He further opined that plaintiff was expected to remain disabled for the following year. *Id*.

Plaintiff also received treatment from Dr. Mouzer Al Samman. Dr. Al Samman first evaluated plaintiff on September 18, 2009, for a colon cancer screening. Colonoscopy revealed

hemorrhoids and polyps, which were removed. AR 512-13. Dr. Al Samman did not see plaintiff again until May 18, 2011. At that time plaintiff appeared healthy, was doing well with mild fatigue, and his hypertension was stable. *Id*. at 507-508. On August 17, 2011, Dr. Al Samman completed a medical source statement in which he stated that plaintiff could only work 2 hours a day. *Id*. at 535. He further opined that plaintiff could occasionally lift up to 60 pounds; occasionally balance, stoop, kneel, crouch, crawl, and reach, but never climb; stand/walk for no more than two hours at a time; and sit for no more than 2 hours at one time. *Id*. at 535-537. He further opined that plaintiff may require frequent rest breaks, and that his medications may cause dizziness, balance impairments, or drowsiness. *Id*. at 536.

On September 10, 2011, Dr. Al Samman completed a second assessment of plaintiff's functional capacity. *Id*. at 542-545. He opined that plaintiff could sit for 5 hours in an 8-hour workday, but only for 45 minutes at one time; stand/walk for less than 2 hours in 8-hour work day, but only for 45 minutes at one time; and would require 4 unscheduled breaks throughout the day, each lasting 20 minutes. *Id*. at 543-543. He further opined that plaintiff could lift 10 pounds frequently, 20 pounds occasionally, and 50 pounds rarely; could rarely twist, stoop, crouch, and climb stairs, but never climb ladders. *Id*. at 544.

The record also contains a Physical Residual Functional Capacity Assessment completed by Dr. Tambellini, a non-examining physician. *Id*. at 372-76. Dr. Tambellini opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and push and pull without limitation. *Id*. at 373. It was also his opinion that plaintiff could occasionally climb, kneel, crouch, and crawl, and frequently balance and stoop. *Id*. at 374. On August 6, 2010, non-examining physician Dr. Jorgensen opined that plaintiff was capable of performing light work. *Id*. at 393. This opinion was subsequently affirmed by Drs. A. Lizarraras and Norman Zukowsky. *Id*. at 423-424.

In giving limited weight to Dr. Maus' opinion, the ALJ observed that Dr. Maus' conclusion that plaintiff was totally disabled addressed the ultimate issue of disability which is an issue reserved for the Commissioner. *Id*. at 23. The ALJ further commented that, "Missing from

/////

1   Dr. Maus's notation is any discussion with respect to clinical findings and rationale for the
2   disability finding based on claimant's state 1 hepatitis." *Id*.

3         "Although a treating physician's opinion is generally afforded the greatest weight in
4   disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the
5   ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)
6   *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or
7   'unable to work' does not mean that we will determine that you are disabled."). "Further, an ALJ
8   may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the
9   record . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d
10  1190, 1195 (9th Cir. 2004). Dr. Maus provided only his conclusory opinion that plaintiff was
11  disabled, without providing any underlying rationale for that conclusion and the ALJ properly
12  rejected it.

13        Plaintiff, however, makes the unexplained argument that "the opinion of Dr. Mark Maus
14  that the plaintiff had Hepatitis C is not *controverted* by the statement of any doctor who examined
15  the plaintiff, or who reviewed the medical records of the plaintiff." ECF No. 15 at 11 (emphasis
16  in original). The relevance of this argument is not apparent. First, Dr. Maus's diagnosis alone is
17  not sufficient to supporting a finding that plaintiff is disabled. *See Matthews v. Shalala*, 10 F.3d
18  678,680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a
19  disability."). Furthermore, the ALJ did not disagree with Dr. Maus's diagnosis of hepatitis C.
20  Indeed, the ALJ specifically found that plaintiff's hepatitis C was a severe impairment. AR 20.
21  Thus, the mere fact it is undisputed that plaintiff has Hepatitis C does not undermine the ALJ's
22  decision to give reduced weight to Dr. Maus's opinion as to the ultimate conclusion of disability.

23        As for Dr. Al Samman's opinion, the ALJ found that it was "completely incongruent with
24  his own scant contemporaneous treatment records that pertain to [sic] solely to a colon screening
25  prior to the date last insured and apparent successful treatment given the lack of treatment for two
26  years thereafter." AR 24. The ALJ further stated that Dr. Samman's opinion that plaintiff could
27  not sit, stand, and walk for greater than two hours lacked any support from the record, including
28  his own treatment records. *Id*.

9

An ALJ may reject a treating physician's opinion that is unsupported by rationale, treatment notes, or objective findings. *Tonapetyan*, 242 F.3d at 1149. Under this standard the record supports the ALJ's finding. Plaintiff was seen by Dr. Al Samman on September 18, 2009, for a colon screen. AR 512. Treatment notes from that visit indicate that plaintiff appeared healthy, was not in any distress, and had a normal gate. *Id*. at 512-513. Plaintiff was seen again by Dr. Al Samman on May 18, 2011, nearly two years later, for a hepatitis C consultation. AR 507- 508. Notes from that consultation reflect that plaintiff had a normal gait, appeared healthy and "appear[ed] to be doing well with mild fatigue." *Id*. at 507-508. These treatment notes do not support the extent of the limitations assessed by Dr. Al Samman, and Dr. Al Samman failed to identify any objective findings to support his opinion that plaintiff could not stand/walk or sit for more than 2 hours in an 8-hour workday, but for no more than 45 minutes at one time. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the ALJ properly rejected a treating physician's opinion that was extreme in light of the findings made by the doctor).

Plaintiff contends, however, that the lack of objective findings contained in Dr. Al Samman's treatment notes is insufficient because there is evidence in the record indicating that plaintiff's medical chart was sent to Dr. Al Samman. ECF No. 17 at 6; *see* AR 518. The fact that Dr. Al Samman had other medical records at his disposal does not alter the fact that his opinion is completely unsupported by his own treatment notes. Furthermore, there is no indication that Dr. Al Samman relied on medical records created by other physician's in forming his medical opinion.

Lastly, plaintiff argues that the opinions from state agency physicians, which included Drs. Tambellini, Lizarraras, and Zukowsky, did not constitute sufficient evidence justifying the rejection of the opinions from Dr. Maus and Dr. Al Samman. ECF No. 15 at 16-17. If taken alone, that is true. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). Here, however, the ALJ did not reject Dr. Maus and Dr. Al Samman's opinions simply because they were inconsistent with the opinions from these non-examining physicians. As just explained, the ALJ rejected the

1  treating opinions because they either went to the ultimate issue of disability or were inconsistent
2  with the physicians' own treatment notes.  As discussed, these reasons constitute specific and
3  legitimate reasons for discounting the opinions of Drs. Maus and Al Samman.  Accordingly, the
4  ALJ did not err in weighing the medical opinions of record.

5         C.  <u>The ALJ Provided Legally Sufficient Reasons for Discrediting Plaintiff's Testimony</u>

6         Plaintiff also argues that the ALJ erred in finding that plaintiff's testimony was not
7  credible.  ECF No. 15 at 14-16.  In evaluating whether subjective complaints are credible, the
8  ALJ should first consider objective medical evidence and then consider other factors.  *Bunnell v.*
9  *Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of
10 impairment, the ALJ then may consider the nature of the symptoms alleged, including
11 aggravating factors, medication, treatment and functional restrictions.  *See id*. at 345–47.  The
12 ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent
13 statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to
14 seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily
15 activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Work records, physician and
16 third party testimony about nature, severity and effect of symptoms, and inconsistencies between
17 testimony and conduct also may be relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th
18 Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a
19 valid consideration by the ALJ in determining whether the alleged associated pain is not a
20 significant, nonexertional impairment.  *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th
21 Cir. 1995).  The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v.*
22 *Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.
23 *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).  "Without affirmative evidence
24 showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's
25 testimony must be clear and convincing."  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595,
26 599 (9th Cir. 1999).

27        Plaintiff alleges disability due to fatigue, lack of concentration, dizziness, headaches,
28 hepatitis C, hypertension, and history of stroke.  AR 167.  He testified that he spends most of his

time at home doing very little activity. *Id*. 50. He spends a lot of time laying on his back and napping. *Id*. He testified that he goes for walks and that he is able to make himself a sandwich. *Id*. at 52. He also reported getting fatigued after performing tasks for a short period of time. *Id*. at 205.

The ALJ found plaintiff's testimony regarding his limitations was not credible. In doing so, the ALJ focused on the minimal medical evidence prior to plaintiff's date last insured and the medical evidence that, contrary to plaintiff's testimony, he has not been compliant with taking his prescribed hypertensive medications. AR 24. The ALJ's findings are supported by the record.

As observed by the ALJ, the record contains only limited medical evidence that predated December 31, 2009, plaintiff's date last insured. *Cf. Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) ("In order to obtain disability benefits, [a claimant] must demonstrate that he was disabled prior to his last insured date."). While an ALJ may not rely solely on a lack of objective medical evidence to support an adverse credibility finding, it is a relevant consideration in assessing credibility. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Plaintiff's date last insured was December 31, 2009. AR 20. The record shows that plaintiff suffered his stroke in June 2009, but was asymptomatic within a few months. AR 355-360. While there were some follow-up visits concerning plaintiff's stroke and hypertension, the vast majority of the medical evidence in the record pertains to treatment provided after 2009. *See* AR 345-350, 369-370, 400-433, 476-508, 515-564. Furthermore, while plaintiff alleges various functional limitations due to his hepatitis, the records shows that this diagnosis was not confirmed until April 2010, after his date last insured. *Id*. at 369. Thus, the ALJ properly considered the lack of medical evidence during the relevant time period in assessing plaintiff's credibility as to his limitations.

The ALJ also discredited plaintiff's subjective complaints based on evidence that he was not compliant in taking his hypertension medication. AR 24; *see Molina v. Astrue*, 674 F.3d 1104, 1113-1114 (9th Cir. 2012) ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure . . . to follow a prescribed course of treatment"). The record shows that plaintiff was diagnosed with

12

1    hypertension in September 2005 and prescribed medication, diet, and exercise. AR 450. Medical
2    records from December 22, 2006, reflect that plaintiff had been previously prescribed medication
3    for his hypertension, but he had ceased taking his medicine. *Id*. at 441. On June 9, 2010, plaintiff
4    was admitted to the hospital. AR 259. In addition to being diagnosed with hypertensive crisis, it
5    was noted that he had "uncontrolled hypertension, previously on no medication." *Id*. Two
6    months later, plaintiff was asymptomatic, his blood pressure was 128/88, and he was "doing well
7    on his meds." *Id*. at 357. In January 2011, plaintiff's blood pressure was 136/88, and compliant
8    with medication. *Id*. at 495. However, in March 2011, plaintiff presented with increased blood
9    pressure after he had been out of medication for a week. *Id*. at 489. Records from September
10   2011 showed that plaintiff's blood pressure had improved since the previous visit. *Id*. at 551.

11        Without citation to the record, plaintiff argues that "[a] fair review of the medical
12   evidence indicates that the claimant was compliant when he had medical insurance and/or the
13   funds to purchase his medication."[3] ECF No. 15 at 15. His reply brief explains that he testified at
14   the hearing that he did not have insurance from 2007 through 2009. ECF No. 17 at 7. But his
15   testimony regarding lack of insurance does not explain his noncompliance with his hypertension
16   medication. The record shows that plaintiff was noncompliant in taking his medication in
17   December 2006, *id*. at 441, and in March 2011, *id*. at 489, at times that he had insurance.
18   Plaintiff testified he had been regularly taking his hypertension medication since 2004, but he had
19   a lapse in insurance from 2007 to 2009. Although his insurance lapsed in 2007, he stated that he
20   was prescribed a 6 month supply of medication, so he was able to regularly take his hypertension
21   medication up until 2008. *Id*. at 46-47.

22        Not only did plaintiff's testimony fail to explain his failure to comply with his medication,
23   it further supported the ALJ credibility determination. The ALJ found plaintiff's credibility
24   weakened based on inconsistencies between his statements regarding medication compliance and

---

[3] "Where a claimant provides evidence of a good reason for not taking medication for h[is] symptoms, h[is] symptom testimony cannot be rejected for not doing so." *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 1996)); *See also Regennitter v. Commissioner of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (failure to follow treatment plan is not a legitimate reason for rejecting a doctor's opinion when the failure is due to lack of resources.)

the medical record. *Id*. at 25. He testified to regularly taking his medication until 2008, but treatment records show that he was noncompliant in December 2006, *id*. at 441, an inconsistency which further supports the ALJ's credibility determination. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding that the ALJ properly discounted plaintiff testimony where it was inconsistent "with the medical evidence . . . . Thus the ALJ discounted the [plaintiff's] testimony because he found it to be unbelievable in general.").

For these reasons the ALJ provided several clear and convincing reasons, supported by substantial evidence, for finding that plaintiff was not credible.

D. <u>The ALJ Provided Legally Sufficient Reasons for Rejecting Olesya Ferrell's Testimony</u>

Plaintiff next argues that the ALJ erred by failing to provide legally sufficient reasons for rejecting his wife's testimony. ECF No. 15 at 9. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ must consider this testimony in determining whether a claimant can work. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d)(4); *Smolen*, 80 F.3d at 1288. However, in doing so the ALJ is free to evaluate that testimony and determine the appropriate weight it should be given in the light of the other evidence. To discount the testimony of a lay witness, the ALJ must "give reasons that are germane to each witness." *Id*. at 1053; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff's wife, Olesya Ferrell, completed a third-party functional report. AR 195-201. She stated that plaintiff is able to get ready in the morning, drive her to work, go for walks outside, and help take care of their 5-month old child. *Id*. at 195-196. She further stated that he gets dressed slow, but showers fast, and needs breaks while getting ready. *Id*. at 197. She also stated that he doesn't do house work because he gets too tired, that he has to take naps, and that he can only walk a couple blocks without needing to rest. *Id*. at 198, 200.

/////

1    The ALJ gave some weight to Ms. Ferrell's statement. *Id*. at 22. However, he gave no weight to her testimony that plaintiff could do virtually nothing, and needed to lay down most of the day because it was "not supported." *Id*. The ALJ did not specifically explain how Ms. Ferrell's statements regarding plaintiff need to lay down and rest through the day were unsupported. However, her statements appear to only reiterate and depend upon plaintiff's statements regarding his fatigue, which the ALJ found not credible. As the ALJ gave clear and convincing reasons for rejecting such complaints, the ALJ did not err in rejecting similar testimony from Ms. Ferrell. S*ee Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

E.  <u>The ALJ Did Not Err in Questing the VE</u>

Plaintiff contends that that the ALJ erred by posing hypothetical questions to the VE that did not include all of his functional limitations. ECF No. 15 at 17-16. This argument is based on plaintiff's contention that the ALJ's RFC assessment did not include his treating physicians' opinions as well has his subjective complaints. As explained above, the ALJ did not err in rejecting this evidence. Accordingly, the ALJ was not required to pose a hypothetical that included limitations premised on opinions the ALJ specifically rejected.

IV.  <u>CONCLUSION</u>

The ALJ applied the proper legal standard and his decision was supported by substantial evidence. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

15